UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| TIMOTHY FEAR,<br><br>   Plaintiff,<br><br>   v.<br><br>CDCR EMPLOYEES AT SAN QUENTIN; et al.,<br><br>   Defendants.<br>_____/ | No. 3:14-cv-05473-LB<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>[Re: ECF Nos. 1, 6] |

## INTRODUCTION

Timothy Fear, a prisoner currently incarcerated at the Correctional Training Facility - Soledad, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. His complaint and amended complaint are now before the court for review under 28 U.S.C. § 1915A. This order dismisses the complaint and amended complaint, and requires Mr. Fear to file a second amended complaint.

## STATEMENT

### I. PROCEDURAL HISTORY

Plaintiff filed a complaint on December 16, 2014, and an amended complaint three days later. (*See* ECF Nos. 1 and 6.[1]) Less than two weeks later, he filed a notice stating that he intended to "file

---

[1] Pin cites are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of documents.

a typed updated complaint with this court if possible next week." (ECF No. 7.)  The court then issued an order stating that, "[]n light of Mr. Fear's intent to file a second amended complaint, the court will wait for that pleading to be filed (or until twenty days from the date of this order, whichever occurs first) before doing the initial review." (ECF No. 10 at 1.)  Thereafter, Mr. Fear requested and received two extensions of the deadline to file a second amended complaint, eventually making the second amended complaint due on April 24, 2015.  (*See* ECF Nos. 17 and 20.)  Mr. Fear never filed the second amended complaint.  The court therefore will now review the pleadings on file.

Mr. Fear's *amended* complaint is unsigned and presents a very abbreviated version of the allegations.  (ECF No. 6.)  An unsigned pleading may be stricken if the omission is not promptly corrected after being called to the party's attention.  *See* Fed. R. Civ. P. 11(a).  There is no reason to require Mr. Fear to submit a signed copy of the amended complaint because it has even more deficiencies than the original complaint and also necessitates a second amended complaint.  Whereas the original complaint had a 4-page attachment describing his claims, that attachment was not included with the unsigned amended complaint, which included only a half-page summary of part of his claims.  Therefore, the court dismisses the amended complaint due to the failure to sign it and will treat the original complaint as the operative pleading.  The original complaint will be reviewed under 28 U.S.C. § 1915A.

## II. ALLEGATIONS OF COMPLAINT

The complaint alleges the following about events and omissions at San Quentin State Prison:

Mr. Fear filed a complaint with Internal Affairs on or about May 2, 2014.  (ECF No. 1 at 5.)

On or after May 2, 2014, Mr. Fear gave an unidentified prison counselor some documents for photocopying to use as court exhibits.  (*Id.* at 9.)  The documents detailed Mr. Fear's cooperation with the San Diego Police Homicide Division.  The "documents made their way into the possession of inmates Deragon and Spraeka who showed them to all the white relevant inmates." (*Id.*)

On May 3, 2014, Mr. Fear was told by inmate Deragon, a leader of "the white inmates," to "'roll it up' or else.  ('Roll it up' means to go into protective custody.)" (*Id.* at 5.)  It is Mr. Fear's "allegation and claim that inmate Deragon was ordered by correctional officer Plagman . . . to bully

and harass" him. (*Id.*) Since that day, Mr. Fear has been the victim of "countless" incidents of harassment and assaults. (*Id.*)

On May 25, 2014, inmate Spraeka told Mr. Fear to check into protective custody, but backed off when "he realized he had miscalculated his abilities to intimidate" Mr. Fear. (*Id.*) Inmates Spraeka and Deragon have shown Mr. Fear's confidential paperwork to "all the relevant white inmates, especially those who work in Prison Industries." (*Id.* at 7.) (Mr. Fear states that the confidential paperwork is listed in Exhibit D, but there is no Exhibit D to his complaint.)

On May 26, 2014, inmate Spraeka told Mr. Fear that Mr. Fear was infected with HIV. Mr. Fear "highly doubt[s] this statement but now [he is] on notice." (*Id.*)

On June 5, 2014, Mr. Fear went to the doctor and asked about an HIV test and colon screening. The doctor ordered an HIV test. (*Id.*) On June 9, 2014, blood was drawn at the hospital lab, which Mr. Fear assumed was for the HIV test. On June 23, 2014, the lab test results came back showing "everything was normal," although the test result did not list the type of test performed and Mr. Fear assumed was an HIV test. (*Id.*) On August 5, 2014, nurse Byrd told him that no HIV test had been done at the lab; although the test had been ordered, it had not yet been performed.

On or about August 11, 2014, C/O Plagman, C/O Martinez and sergeant Young started verbally harassing Mr. Fear. Mr. Fear describes the harassment: "C/O Plagman calls me a 'rat' and C/O Martinez calls me a 'snitch' under his breath every chance he gets. Sergeant Young walked up to my door and with invisible pen takes down my cell number on an invisible pad. The intent is clear: I am marked." (*Id.*)

On August 12, 2014, Mr Fear was "attacked with infected blood put in [his] evening meal," and the blood had hepatitis C, according to inmate Spraeka. Mr. Fear became ill and went to the infirmary. (*Id.*)

On August 15, 2014, Mr. Fear learned that his prison counselor had transferred to another part of the prison. Mr. Fear has the "strong belief prison counselor Tafoya became aware of the [August 12] attack and fled the scene." (*Id.* at 9.)

On October 9, 2014, Mr. Fear received the third rejection of his inmate appeal requesting to see the captain of the North Block. (*Id.*) Mr. Fear thought the appeal was rejected because the CDCR

"wants no part of" dealing with the April 12, 1999 order or the earlier inmate appeal that was granted, ECF No. 1 at 11, referring to the January 10, 2014 inmate appeal response memorandum attached to his complaint. (*See* ECF No. 1 at 5, 16-17.)

The January 10, 2014 inmate appeal response memorandum attached to the complaint stated that Mr. Fear "is requesting to meet with either the Associate Warden, Captain or correctional counselor II (CC II) to discuss the facts surrounding his request for Inter-State Compact transfer. [¶] Furthermore, the appellant is requesting that his fine and restitution imposed by the State of California be stayed." (ECF No. 1 at 16.) According to the memorandum, the inmate appeal was "granted in that [a] meeting was conducted to discuss the appellant's issue." (*Id.* at 17.) The inmate appeal response meant that prison officials had granted his request that they meet with him to talk about his request for an interstate compact transfer, but did not mean that prison officials agreed to transfer him to another state. (Readers familiar with the inmate appeals process in California realize that the formal ruling on an inmate appeal – e.g., granted, partially granted, or denied – often has more to do with the particular wording of the "action requested" part of the inmate appeal form than the substance of the inmate's problem.)

The April 12, 1999 order attached to the complaint is an "order clarifying criminal minutes of 3/18/99 re: post-remittitur re-sentence" in Mr. Fear's criminal case. (ECF No. 1 at 19-20.) That order stated that the notation "'R/F stayed if Defendant is transported to Florida for Habeas proceedings. R/F stayed until Defendant returned to California'" on the "'Criminal Minutes - Pronouncement of Judgment' form" was intended "to mean that the restitution fine should be stayed to enable the Defendant to be transported to Florida to challenge his Florida felony conviction, either to institute habeas proceedings or pursuant to interstate compact, and should remain stayed for so long as defendant is in custody enroute to Florida and remains in custody in Florida, and until the defendant is returned by Florida authorities to California to resume serving the sentence herein imposed." (ECF No. 1 at 19.) The order also explained how the court had calculated Mr. Fear's current sentence in light of Mr. Fear's prior convictions and prison terms. (*Id.* at 19-20.) Despite Mr. Fear's allegations to the contrary, the April 12, 1999 order plainly did not state that Mr. Fear cooperated with law enforcement, that he could transfer if he ever became worried about his safety,

or that he would be transferred to Florida.  (*Compare* ECF No. 1 at 7, 11 *with id.* at 19-20.)

**ANALYSIS**

**I. LEGAL STANDARDS**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  *See id.* at § 1915A(b).

The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  "Specific facts are not necessary; the statement need only . . . give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations and internal quotation marks omitted). Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**II. REVIEW OF CLAIMS**

The civil rights complaint has several problems and therefore must be amended.  First, Mr. Fear named other prisoners as defendants without making sufficient allegations against them to show any liability under § 1983.  Private individuals generally do not act under color of state law, and therefore are not liable under § 1983.  Nonetheless, action taken by private individuals may be under

1  color of state law if "there is such a close nexus between the State and the challenged action that
2  seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Academy v.*
3  *Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). State action may be found
4  where private individuals are willful participants in joint activity with the State or its agents in
5  effecting a constitutional violation, *see id.* at 296, as may exist when there is an agreement or
6  conspiracy between a government actor and a private party. *See Dennis v. Sparks*, 449 U.S. 24, 29
7  (1980). Mr. Fear did not include any nonconclusory allegations suggesting that the other prisoners
8  were state actors or could have liability under a joint activity theory of state action. Mr. Fear alleged
9  his theory that various prisoners acted at the behest of or in concert with correctional officials, but
10 did not allege any facts to elevate that theory above mere speculation.

11    If Mr. Fear wants to pursue claims against individual prisoners in his second amended complaint,
12 he must allege facts showing a conspiracy or other basis for holding each named prisoner liable
13 under § 1983. "'A civil conspiracy is a combination of two or more persons who, by some
14 concerted action, intend to accomplish some unlawful objective for the purpose of harming another
15 which results in damage.'" *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999)
16 (citation omitted). A conspiracy is not itself a constitutional tort under 42 U.S.C. § 1983, but may
17 "enlarge the pool of responsible defendants by demonstrating their causal connections to the
18 violation." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (en banc). Mr. Fear is
19 cautioned that conclusory allegations of a conspiracy, unsupported by any material facts, are
20 insufficient to state a claim. *See Simmons v. Sacramento County Superior Court*, 318 F.3d 1156,
21 1161 (9th Cir. 2003); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989). If Mr.
22 Fear wants to pursue conspiracy-based liability, he should explain the role of each defendant in the
23 conspiracy and allege with particularity who made an agreement with whom, when the agreement
24 was made, and the terms and purpose of the agreement.

25    Second, many of the allegations show nothing more than verbal harassment by guards and
26 prisoners. Verbal harassment alone is not actionable under 42 U.S.C. § 1983. *See Freeman v.*
27 *Arpaio*, 125 F.3d 732, 738 (9th Cir. 1997), *overruled in part on other grounds by Shakur v. Schriro*,
28 514 F.3d 878, 884-85 (9th Cir. 2008); *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1353 (9th

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

Cir. 1981), *aff'd sub nom. Kush v. Rutledge*, 460 U.S. 719 (1983); *see, e.g., Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended* 135 F.3d 1318 (9th Cir. 1998) (disrespectful and assaultive comments by prison guard not enough to implicate 8th Amendment); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (directing vulgar language at prisoner does not state constitutional claim); *Burton v. Livingston,* 791 F.2d 97, 99 (8th Cir. 1986) ("mere words, without more, do not invade a federally protected right"). Mr. Fear's allegations that prisoners told him he should move to protective custody, he had HIV and he had consumed food with hepatitis-infected blood in it, and that a guard wrote his cell number down with an invisible pen on a invisible pad are incidents of verbal harassment that are not actionable under § 1983. At a certain point, verbal harassment may rise to the level of a constitutional violation, as for example may occur when a prison guard tells other prisoners that a prisoner is an informant, but the statements mentioned in this paragraph do not rise to that level.

Third, Mr. Fear did not state a claim for deliberate indifference his safety. The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners, including protecting them from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). A § 1983 claim may be stated under the Eighth Amendment against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm or injury to a prisoner by another prisoner that may result from spreading certain rumors about the prisoner. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (deliberately spreading rumor that prisoner is an informant may state claim for violation of right to be protected from violence while in state custody). Mr. Fear alleged that C/O Plagman and C/O Martinez made comments indicating that he was an informant, but did not allege that either defendant made such comments to other prisoners or made the comments where other prisoners heard them. Absent such allegations, defendants' comments appear to be non-actionable verbal harassment; in other words, the comments are not an act of communicating to other prisoners that a prisoner is an informant that might put the prisoner in danger from those prisoners.

In his second amended complaint, Mr. Fear must allege facts show what each defendant did that amounted to deliberate indifference to his safety if he wishes to pursue such a claim. Mr. Fear must

link each proposed defendant to his claim by explaining what each defendant did or failed to do that caused a violation of his rights. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

Fourth, Mr. Fear did not state a claim for deliberate indifference to his medical needs. The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for prisoner health as well as safety. *See Farmer*, 511 U.S. at 834. For an Eighth Amendment claim based on the response to a prisoner's medical needs, the prisoner must plead and prove: (1) that he had a serious medical need, and (2) deliberate indifference to that need by the defendant, i.e., the prison official knows of and disregards an excessive risk to prisoner health and safety. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). A serious medical need may exist if the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation and internal quotation marks omitted). Mr. Fear alleged that an HIV test was ordered but not performed. These allegations failed to state a § 1983 claim against any defendant, as he has not alleged a serious medical need or that anyone acted with deliberate indifference to it. As for his allegation that blood was drawn but an HIV test not run, that allegation does not show deliberate indifference because blood may be drawn for many different reasons besides an HIV test and the medical record attached to the complaint states that the doctor was ordering an HIV test as well as a test to determine his "fasting glucose" with "fasting lipid profile." (ECF No. 1 at 22.) In light of the doctor's note indicating that a fasting glucose test would be done, the fact that Mr. Fear's blood was drawn without an HIV test being done on it does not show wrongdoing.

If Mr. Fear wishes to pursue a claim for deliberate indifference to his medical needs, Mr. Fear needs to allege in his second amended complaint the existence of a serious medical need as well as facts suggesting that one or more defendants acted with deliberate indifference to that medical need. Mr. Fear must link each proposed defendant to his claim by explaining what each defendant did or failed to do that caused a violation of his rights. *See Leer*, 844 F.2d at 634.

Fifth, the allegations that prison officials rejected Mr. Fear's inmate appeal did not state a claim upon which relief may be granted. The mishandling or failure to grant a prisoner's appeal in the prison administrative appeal system does not amount to a violation of the prisoner's right to due

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

process. There is no federal constitutional right to a prison administrative appeal or grievance system for California prisoners. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see generally Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause). Prison officials are not liable for a due process violation for simply failing to process an appeal properly or failing to find in the prisoner's favor.

In his second amended complaint, Mr. Fear must be careful to allege facts showing the basis for liability for each defendant for each of his legal claims. He should not refer to them as a group (e.g., "the defendants"); rather, he should identify each involved defendant by name and link each of them to his claim by explaining what each involved defendant did or failed to do that caused a violation of his rights. *See Leer*, 844 F.2d at 634.

## CONCLUSION

For the foregoing reasons, the amended complaint is dismissed and the complaint is **DISMISSED WITH LEAVE TO AMEND**. The second amended complaint must be filed no later than **June 19, 2015**, and must include the caption and civil case number used in this order and the words SECOND AMENDED COMPLAINT on the first page. Mr. Fear is cautioned that his second amended complaint will supersede existing pleadings and must be a complete statement of his claims, except that he does not need to plead again any claim the court has dismissed without leave to amend. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc). Failure to file the second amended complaint by the deadline will result in the dismissal of the action for failure to state a claim.

**IT IS SO ORDERED.**

Dated: May 19, 2015

LAUREL BEELER
United States Magistrate Judge